NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————————

No. 11-1218

———————————

HUSSEIN ALI MUHAMMED MIRJAN,
Appellant

v.

ATTORNEY GENERAL OF THE UNITED STATES; EVANGELIA A. KLAPAKIS, or
Successor Field Office Director, United States Citizenship and Immigration Services –
Philadelphia District

———————————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. Civ. No. 5-10-cv-04641)
District Judge: Honorable J. William Ditter, Jr.

———————————

Submitted Under Third Circuit LAR 34.1(a)
April 26, 2012

———————————

Before: GREENAWAY, JR., ROTH, and TASHIMA[*], *Circuit Judges*.

———————————

(Opinion Filed: August 28, 2012)

———————————

OPINION

———————————

---

[*] Hon. A. Wallace Tashima, Circuit Judge, United States Court of Appeals for the
Ninth Circuit, sitting by designation.

1

GREENAWAY, JR., *Circuit Judge*.

This case arises from Appellant Hussein Ali Muhammed Mirjan's ("Mirjan") denied petitions to adjust his immigration status with the United States Citizenship and Immigration Service ("CIS" or "the agency"). After his appeal was denied by the Board of Immigration Appeals ("BIA"), Mirjan filed the instant action in the United States District Court for the Eastern District of Pennsylvania, seeking review under the Administrative Procedures Act ("APA") of the BIA's decision not to adjust status. The District Court dismissed Mirjan's complaint for failure to state a claim. For the reasons stated herein, we will affirm the District Court's order dismissing Mirjan's complaint.

## I. **BACKGROUND**

Because we write primarily for the benefit of the parties, we recount only the essential facts.

Mirjan, a citizen of Iraq, married Bridget Marie Bossler ("Bossler"), a United States citizen, on June 26, 2005. In December 2005, the couple filed petitions to adjust Mirjan's status to that of a permanent resident. A CIS representative interviewed them on June 29, 2006. Bossler died on August 31, 2009, while the petitions were still pending. As a result of Bossler's death, Mirjan's initial I-130 petition (for an alien relative) was converted to an I-360 (for amerasian, widow(er), or special immigrant). A CIS representative interviewed Mirjan again in October 2009, after which it provided him with a Notice of Intent to Deny his petition based on discrepancies in the record. Mirjan replied and provided additional information in the hope that he might persuade the CIS of

the validity of his petition. Specifically, Mirjan tried to explain discrepancies in the dates of co-habitation and occupancy at certain residences. Nonetheless, the CIS denied his petition on December 16, 2009, finding that Mirjan failed to establish that he and Bossler "were engaged in a bona fide marital relationship." (App. at A17). Mirjan appealed the decision, and the BIA denied his appeal on August 13, 2010.

Mirjan filed a complaint in the United States District Court for the Eastern District of Pennsylvania, alleging that the CIS decision not to adjust status was arbitrary and capricious or an abuse of discretion. The District Court dismissed the complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Mirjan now appeals the District Court's order dismissing the case.

## II. JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction pursuant to 5 U.S.C. § 702. We have jurisdiction pursuant to 28 U.S.C. § 1291.

We exercise plenary review of a district court's grant of a motion to dismiss for failure to state a claim. *Grief v. Klem*, 591 F.3d 672, 676 (3d Cir. 2010). To withstand a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). Because we apply the same standard of review under the Administrative Procedures Act ("APA") as the district court, we apply *de novo* review to its assessment of the agency's decision. *See Albert Einstein Med. Ctr. v. Sebelius*, 566 F.3d 368, 373 (3d Cir. 2009).

3

Our review of agency action is governed by the APA, 5 U.S.C. § 706. We may only set aside agency actions, findings, and conclusions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). We apply the same standard when determining whether an agency's actions were an abuse of discretion or arbitrary and capricious. *See Donovan v. Adams Steel Erection, Inc.*, 766 F.2d 804, 807 (3d Cir. 1985).

"The scope of review under the arbitrary and capricious standard is narrow, and a court is not to substitute its judgment for that of the agency." *CBS Corp. v. F.C.C.*, 663 F.3d 122, 137 (3d Cir. 2011) (citing *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). "Where an agency departs from established precedent without announcing a principled reason for such reversal, its action is arbitrary and an abuse of discretion and should be reversed." *Id*. (internal citations omitted). Generally speaking, we will find an agency action to be arbitrary and capricious where

> the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise. The reviewing court should not attempt itself to make up for such deficiencies; we may not supply a reasoned basis for the agency's action that the agency itself has not given.

*Id*. (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962)).

### III. ANALYSIS

We address whether the CIS's decision to deny Mirjan's petition, based on its conclusion that Mirjan failed to show that he and Bossler were engaged in a bona fide marriage, is arbitrary and capricious or an abuse of discretion. The United States Code

explicitly prohibits the approval of petitions from individuals who are participating in a sham marriage. 8 U.S.C. § 1154(c) ("[N]o petition shall be approved if . . . the Attorney General has determined that the alien has attempted or conspired to enter into a marriage for the purpose of evading the immigration laws."). The burden of proof falls on the petitioner to demonstrate by a preponderance of evidence that his marriage was bona fide at its inception. *See Matter of Laureano*, 19 I & N Dec. 1, 3 (BIA 1983).

The record indicates that Mirjan presented several documents in support of his claim that he and Bossler were engaged in a bona fide marriage, including: the marriage certificate, Bossler's birth and death certificates, joint insurance policies, joint tax returns, joint credit card account statements, copies of bank statements, other bills, personal photographs and a copy of a lease from May 1, 2005 through April 30, 2006. Both Mirjan and Bossler provided statements about their marriage in a June 29, 2006 interview. Mirjan then presented additional statements in a second interview on October 22, 2009.

CIS noted a series of inconsistencies in the information Mirjan provided. Specifically, it cited numerous discrepancies between the lease documents used to establish the couple's cohabitation and the testimony from Mirjan, Bossler's father, and Bossler's friend, Megan Gilmer ("Gilmer"). For example, Bossler's father indicated that she resided with him from September 2008 until her death in August 2009. His testimony was supported by both information Bossler provided to authorities in an April 2009 criminal investigation indicating that she resided with her father and her obituary.

This directly conflicted with Mirjan's statements and bills demonstrating that she was residing with him at the same time. Additionally, the CIS concluded that Mirjan's statement that he and Bossler moved in to a trailer at 15132-65 Kutztown Road in Kutztown, PA on June 26, 2005, after their marriage, conflicted with the fact that the lease went to in effect on May 1, 2005 and failed to list Gilmer, who resided with them at this residence, despite indications from Gilmer that it should. The CIS and BIA also noted inconsistencies with Mirjan's assertion that he had never separated with Bossler before her death – specifically, the fact that Bossler's father was unaware of the marriage and the fact that Mirjan was never mentioned in her obituary or offered condolences after her death.

In making its determination, CIS also noted inconsistencies regarding Mirjan and Bossler's personal relationship. For example, despite Mirjan's suggestion that he and Bossler had a perfect marriage, he was unaware of her criminal and arrest history as well as her alleged drug abuse issues. Curiously, he had no knowledge of her outstanding criminal charges at the time of her death, which exposed her to considerable jail time. The CIS also noted statements from Bossler at the time of her felony theft arrest as well as statements from her friends indicating that Bossler was a lesbian. Additionally, Mirjan's communications with his employer and colleagues provided no indication that he was married. He maintained two life insurance policies through his employer, none of which listed Bossler as the beneficiary. He also failed to change his personal information

at work to indicate that he was married, and he never mentioned that his wife had passed away to anyone at work.

While the record clearly indicates that Mirjan provided documents and evidence to support his notion that he and Bossler were engaged in a bona fide marriage, the CIS found that evidence to lack credibility or otherwise fail to establish that Mirjan and Bossler were establishing a life together. In addition to the various identified inconsistencies, the CIS concluded that the other documents provided by Mirjan failed to show that Bossler ever accessed the funds in their joint bank accounts or used any of the joint credit cards. It also determined that the bills in her name were insufficient to establish that Bossler actually resided with Mirjan, particularly in light of her father's credible testimony that she lived with him and a prior landlord's testimony that she lived alone.

Considering the CIS decision and the corresponding evidence, it is clear that the agency considered the relevant evidence, as contemplated by Congress, and offered a more than sufficient explanation for its determinations. *See* 8 C.F.R. § 216.5(e)(2) ("In considering whether an alien entered into a qualifying marriage in good faith, the director shall consider evidence relating to the amount of commitment by both parties to the marital relationship."). Its decision was principled and grounded in a thorough investigation of all of the information provided by Mirjan or otherwise collected during its investigations. Mirjan suggests that the agency's determination is arbitrary and capricious because it runs counter to the evidence presented. Because there is evidence

7

in the record to support the agency's determination and because we do not supplant the agency's judgment with our own, we reject Mirjan's arbitrary and capricious argument. *See CBS Corp.*, 663 F.3d at 137; *see also Burlington Truck Lines*, 371 U.S. at 168 (articulating the standard for determining whether an agency action is arbitrary and capricious).

We find that the agency's decision not to adjust status was not arbitrary or capricious or an abuse of discretion. In light of this finding, we agree with the District Court's determination that Mirjan failed to state a claim under Rule 12(b)(6). We will, therefore, affirm the District Court's order dismissing this case.

## IV. **CONCLUSION**

For the reasons stated above, we will affirm the District Court's order.